No. 44,653

STATE OF KANSAS, *Appellee,* v. ROBERT LEE WILSON, a/k/a ROBERT
LEE JACKSON, *Appellant.*

(426 P. 2d 288)

Opinion filed April 8, 1967.

*M. D. Bartlow*, of Topeka, argued the cause and was on the briefs for appellant.

*Robert D. Hecht*, County Attorney, argued the cause, and *Robert C. Londerholm*, Attorney General, was with him on the briefs for appellee.

The opinion of the court was delivered by

FATZER, J.: The defendant was charged, tried and convicted by a jury of the offense of burglary in the second degree as defined in K. S. A. 21-520, and larceny, as defined in K. S. A. 21-524, and has appealed. (K. S. A. 62-1701, *et seq.*)

It is first contended the district court erred in overruling the defendant's motion for discharge filed March 7, 1966, claiming the state failed to give him a speedy trial in violation of the Fifth and Sixth Amendments to the Constitution of the United States, and Sections 10 and 18 of the Bill of Rights of the Constitution of Kansas. The motion alleged the defendant was an indigent person, unable to make bond, and had been confined in the county jail since he was arrested on October 13, 1965. It further alleged he was not brought to trial during the September 1965 term of court, nor was his case continued over that term for cause, as required by K. S. A. 62-1301, and requested his discharge from custody.

Pertinent events and procedures relating to the charges of burglary in the second degree, and larceny, until the defendant's conviction in the district court on those charges, follow:

On May 16, 1965, a complaint was filed in the city court of Topeka, charging that in the nighttime of May 7-8, 1965, the defendant forcibly broke open a door to the business building of Florence & Hartzell Company, in Topeka, and entered the same with intent to commit a larceny, and did take, steal and carry away eleven company checks, the personal property of that company, contrary to K. S. A. 21-520 and 21-524. A warrant was issued upon the complaint, and on October 13, 1965, the sheriff of Shawnee County arrested the defendant in the Geary County jail, Junction City, Kansas. Later that same day, the defendant was returned to Topeka and confined in the Shawnee County jail.

On the following day, October 14, 1965, the defendant was brought before the court of Topeka and Mr. M. D. Bartlow, a member of the Shawnee County Bar, was appointed to represent him. Having demanded a preliminary examination, the defendant and his court appointed counsel appeared before the court of Topeka on October 28, 1965, for such examination. Evidence was presented by the state, and at the conclusion thereof, the defendant was bound over to the district court to stand trial on the charges alleged against him. Being unable to provide bail, he was committed to the Shawnee County jail to await trial.

On November 3, 1965, an information was filed in the district court charging the defendant with the crimes of burglary in the second degree, and larceny, as alleged in the complaint and warrant.

On January 10, 1966, being the first day of the January 1966 term of the district court, the defendant was brought before the court, and Mr. M. D. Bartlow, who had previously represented him in the court of Topeka, was appointed to represent him.

On March 10, 1966, the defendant's motion for discharge was overruled. Thereafter, on March 14, 1966, and during the January 1966 term, the defendant and his counsel appeared before the district court for formal arraignment. Following his pleas of not guilty on that date, both sides announced ready for trial, a jury was impaneled and sworn, and the trial commenced. On the following day, March 15, 1966, the jury returned its verdict finding the defendant guilty of both offenses as charged in the information.

On March 25, 1966, the defendant's motion for a new trial was presented to the district court, and the court, after hearing evidence, overruled the motion. On the same day, the defendant was sentenced to confinement at hard labor in the Kansas State Penitentiary for a term of 35 years pursuant to the Kansas Habitual Criminal Act (K. S. A. 21-107a), competent evidence establishing the defendant had five times previously been convicted of felonies.

As preliminary to discussing the defendant's contention the state failed to give him a speedy public trial in violation of the constitutional provisions first mentioned, we note the three terms of the Shawnee district court are fixed by K. S. A. 20-1003 as follows: The second Monday in January, the first Monday in April, and the first Tuesday in September. We further note the defendant's arrest on October 13, 1965; his preliminary examination; his confinement in jail during the September 1965 term of the district court, which

term continued until the second Monday in January, 1966. The record does not disclose the defendant's case was continued over that term for cause, as provided in K. S. A. 62-1301. However, there is nothing to indicate that the defendant requested a trial upon the charges alleged in the information.

K. S. A. 62-1301 provides the time of trial of criminal cases, and reads:

"All indictments and informations shall be tried at the first term at which the defendant appears, unless the same be continued for cause. If the defendant appear or is in custody at the term at which the indictment or information is found, such indictment or information shall be tried at that term, unless continued for cause."

The statute was construed in *In re Garner*, 134 Kan. 410, 5 P. 2d 821, and it was held that where a defendant was in jail for want of bail at the term in which the information against him was filed, he was entitled to a trial at that term unless his trial was continued for cause, but such defendant was not entitled to a discharge by habeas corpus because he neither asked for a continuance, nor because the district court did not make a formal order continuing his trial to the next term for cause. In the opinion it was said that no consequence "is declared for a breach of the statute [K. S. A. 62-1301] relied upon by the petitioners herein, and it would never do to make a judicial declaration to that effect in the absence of statute."

Was the defendant denied a speedy public trial? We think not. Section 10 of the Bill of Rights of the Constitution of Kansas provides that in all prosecutions the accused shall be allowed a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed. This is a constitutional mandate to the prosecuting officer to act, and not delay the prosecution of those charged with crime. This section of the Bill of Rights is the grant of a right to an accused, not a privilege, which cannot be denied by the laches of the public officers. (*In re Trull*, 133 Kan. 165, 169, 298 Pac. 775; *State v. Brockelman*, 173 Kan. 469, 249 P. 2d 692; *State v. Hess*, 180 Kan. 472, 474, 304 P. 2d 474.)

In determining what shall constitute a speedy public trial of an accused so as to render the constitutional guarantee effective, this court has looked to legislative definitions of what is, under the circumstances which attend, a reasonable and proper delay in bringing an accused to trial, and to what periods of delay caused by the ne-

glect of official duty shall require his discharge. (*In re McMicken, Petitioner,* 39 Kan. 406, 408, 18 Pac. 473; *State v. Dewey,* 73 Kan. 739, 741, 88 Pac. 881; *In re Trull,* supra; *Nicolay v. Kill,* 161 Kan. 667, 670, 170 P. 2d 823; *State v. Hess,* supra; *State v. Goetz,* 187 Kan. 117, 353 P. 2d 816; *State v. Williams,* 187 Kan. 629, 630, 360 P. 2d 11.) The right granted to an accused is one which he may waive (*In re Baxter,* 121 Kan. 636, 639, 249 Pac. 610), but it is unnecesary to here state what conduct will constitute a waiver of that right.

The statute (K. S. A. 62-1431) here pertinent which has been held by this court to supplement Section 10 of the Bill of Rights as to render the constitutional guarantee effective, reads:

"If any person under indictment or information for any offense, and committed to prison, shall not be brought to trial before the end of the second term of the court having jurisdiction of the offense which shall be held after such indictment found or information filed, he shall be entitled to be discharged so far as relates to the offense for which he was committed, unless the delay shall happen on the application of the prisoner, or shall be occasioned by the want of time to try the cause at such second term."

Public offenses may be prosecuted in the district court, either by indictment or information (K. S. A. 62-801), but no information shall be filed against any person for any felony until the accused shall have had a preliminary examination before an examining magistrate, unless he shall waive his right thereto, or unless he shall be a fugitive from justice, or unless the district judge, in extreme cases, orders an information to be filed. (K. S. A. 62-805, 62-807; *State v. McCarther,* 196 Kan. 665, 670, 671, 414 P. 2d 59.) While we have no statute stating in definite terms when the information shall be filed following a preliminary examination, K. S. A. 62-804 makes it the duty of the county attorney to act diligently and file the information without unnecessary delay. (*State v. Dewey,* supra, p. 742; *In re Trull,* supra, p. 168.)

In the instant case, the county attorney acted diligently and filed the information during the September 1965 term of the district court which was the same term in which the preliminary examination was held. That term of court ended on the second Monday of January, 1966, without the defendant having been brought to trial. However, on Monday, January 10, 1966, the first day of the January 1966 term, counsel was appointed and the defendant was tried to a jury during that term of the district court.

Notwithstanding the fact the defendant was confined in the Shawnee County jail awaiting trial, it is the settled rule of this court

in construing K. S. A. 62-1431, that in computing the number of terms of court expiring before the trial of a criminal case, the term during which the information was filed is not to be counted. (*State v. Patterson*, 126 Kan. 770, 271 Pac. 390; *State v. Stanley*, 179 Kan. 613, 296 P. 2d 1088; *State v. Williams*, supra; *Nicolay v. Kill*, supra.)

In substance, while K. S. A. 62-1301 prescribes the time for trial of criminal cases, no consequences are declared for its breach, but 62-1431 provides for the discharge of an accused who is in custody in default of bond when he is not brought to trial before the end of the second term following the term in which the preliminary examination was held and the information diligently filed by the county attorney, unless the delay shall happen on the application of the defendant, or be occasioned by want of time to try the case. See, *In re Trull*, supra.

Applying the factual situation in the instant case to the legal rules stated, the September 1965 term being excluded, the defendant was brought to trial during the January 1966 term which was the first term following the term in which the preliminary examination was held and the information diligently filed, and it clearly appears the district court did not err in overruling the defendant's motion for discharge under K. S. A. 62-1301 or 62-1431.

Likewise, we hold the defendant was not denied the right to a speedy public trial in violation of either the Fifth or Sixth Amendments to the Constitution of the United States as made applicable to the states through the Fourteenth Amendment. The defendant cites no authority the provisions of K. S. A. 62-1431 are unconstitutional as here applied through application of this court's many decisions, and we know of none to that effect. In the recent case of *Klopfer v. North Carolina* [decided March 13, 1967], 386 U. S. 213, 18 L. Ed. 2d 1, 87 S. Ct. 988, the supreme court of the United States held that the right to a speedy public trial is as fundamental as any of the rights secured by the Sixth Amendment, but the factual situation there considered was distinctly different than here involved. There, the accused had no means by which he could obtain a dismissal or have the case restored to the docket for trial, and was denied the opportunity to exonerate himself in the discretion of the prosecutor throughout an unlimited period in which the prosecutor might or might not restore the case to the docket for trial.

The defendant asserts the district court erred in permitting De-

tective Jerry E. Smith, of the Junction City police department, to testify over his objection to oral statements he made to the detective on May 15, 1965, in the Geary County jail. To discuss the point, it is necessary to state briefly the facts of the crime. During the night or early morning of May 7-8, 1965, the defendant and two other men gained entrance to the Florence & Hartzell Company business office in Topeka by forcibly breaking open an outer door of the building, and, while in the building, rifled the company office, a small safe, and coke and cigarette machines. Eleven company checks which had been signed by Mr. Florence and placed in the safe, were taken. The defendant found the check protector used by the company in writing its checks and stamped out several of the checks for various sums of money. Four days later, on the morning of May 12, 1965, the defendant appeared at the Montgomery Ward Store in Junction City, Kansas, in possession of one of the checks which had been stolen from Florence & Hartzell Company, and cashed the check, endorsing on the back thereof the name of the purported payee, Otis L. Johnson, and obtained $133 and some odd cents. Shortly thereafter the defendant was arrested for burglarizing the office of a construction company near Junction City, and was placed in the Geary County jail. After being confined, Detective Smith interviewed the defendant on May 15, 1965, concerning the Florence & Hartzell Company burglary. During the interview, the defendant made oral statements of his participation in the Topeka burglary, his taking the checks from the company office and cashing one of them at the Montgomery Ward Store in Junction City, and he also admitted the commission of other burglaries and forgeries in different parts of the country. His oral statements were reduced to writing, which consisted of five separate pages and each page was signed by him.

Prior to permitting Detective Smith to testify, the district court heard evidence of the voluntary character of the defendant's statements out of the presence and hearing of the jury, at which time the defendant and his counsel were present and cross examined the detective.

At the hearing, and later before the jury, Detective Smith testified that prior to questioning the defendant he advised him, "he didn't have to say anything, that anything he did say could be used against him in a court of law." That he advised him "he had the right to call a lawyer or a friend anytime he so desired," and after being so

advised, the defendant admitted his participation in the burglary and larceny committed at the Florence & Hartzell Company in Topeka.

The state concedes it might have been better practice to have introduced the defendant's written statement in evidence. In justification of its failure to do so, it states the written statement contained confessions of half-dozen other felonies committed by the defendant not then being litigated, and, as proof of the crime charged, it offered Detective Smith's testimony of the defendant's oral statements detailing his participation in the Topeka burglary and larceny.

In *State v. Myrick*, 181 Kan. 1056, 317 P. 2d 485, it was held that a written statement of a defendant in the nature of an admission or confession must relate to the offense in question and if the statement includes reference to other offenses committed by the defendant, the statement is admissible in evidence where the relevant portions can be separated from the irrelevant, and only that part of the statement may be admitted which is relevant to the issues on trial. We are not advised whether those portions of the defendant's written statement pertaining to other offenses could have been deleted, and only the relevant portion presented to the jury, but, in any event, it does not appear the defendant was prejudiced in any manner by failing to admit the written statement. At most, the written statement with the defendant's signature on each page could only have added greater credence to his oral statements testified to by Detective Smith, and perhaps been more persuasive of the defendant's guilt. The defendant does not suggest there was any variance between the detective's testimony concerning his oral statements and those contained in the written statement, nor does the record indicate counsel sought to have possession of the written statement for the purpose of cross examining the detective. In *State v. Turner*, 193 Kan. 189, 392 P. 2d 863, it was held:

"Oral admissions or written statements against interest in criminal prosecutions are properly admitted as evidence if fully made without inducement or duress, or brought about by some other improper means, and such admissions or written statements do not contravene either Section 10 of the Bill of Rights of our state constitution or the due process clause of the federal constitution." (Syl. ¶ 8.)

In the opinion, the following statement from *State v. Fields*, 182 Kan. 180, 185, 318 P. 2d 1018, was quoted with approval:

" 'It has long been the rule that such oral admissions against interest in criminal prosecutions are properly admitted as evidence if fully made, with-

out inducement or duress, or brought about by some other improper means, and such admissions do not contravene Section 10 of the Bill of Rights against self-incrimination.'" (l. c. 185.)

No contention is made the defendant's oral incriminating statements were the result of coercion, constraint, or promises of leniency or inducement. On the contrary, the district court found they were freely and voluntarily made and were admissible in evidence against him. The record clearly shows the defendant was advised of his right to remain silent; that anything he said could be used against him in court, and of his right to call or consult with counsel. While the defendant cites *Escobedo v. Illinois*, 378 U. S. 478, 12 L. Ed. 2d 977, 84 S. Ct. 1758, and *Miranda v. Arizona*, 384 U. S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, it is noted the defendant's case was tried prior to June 13, 1966, the date of the *Miranda* decision, which is inapplicable by reason of *Johnson v. New Jersey*, 384 U. S. 719, 16 L. Ed. 2d 882 86 S. Ct. 1772, and *Addington v. State*, 198 Kan. 228, 424 P. 2d 871. Moreover, in view of the record presented, the holding in *Escobedo* has no application and we perceive no error on this point.

It is next argued the district court erred in admitting evidence of the defendant's possession of one of the checks stolen from Florence & Hartzell Company, which he cashed at the Montgomery Ward Store in Junction City. It is claimed the evidence was too remote in time and space to be admitted as evidence against one accused of burglary and larceny. The point is not well taken. The unexplained possession of recently stolen property is *prima facie* evidence of guilt sufficient to warrant conviction for stealing the property. (*State v. Burundige*, 114 Kan. 849, 220 Pac. 1039; *State v. Wood*, 118 Kan. 58, 233 Pac. 1029.) The qualification of the rule is that the possession be so near in time to create a moral certainty the possession was not the result of an innocent receipt from the actual thief. (*State v. Hoffman*, 53 Kan. 700, 37 Pac. 138; *State v. Bracher*, 105 Kan. 593, 185 Pac. 734; *State v. McMahan*, 131 Kan. 257, 291 Pac. 745.) Here, the evidence was that the burglary and larceny occurred during the night of May 7, or early morning of May 8, 1965, and four days later, May 12, 1965, the defendant passed a part of the fruits of the crime in Junction City where he cashed one of the stolen checks. In *State v. Jenkins*, 197 Kan. 651, 421 P. 2d 33, it was said that, "A lapse of three days is well within the 'shortly after' provision of the rule." Likewise, it cannot be

said that evidence of the possession of a stolen check in a city over 60 miles from the point of theft four days thereafter by one who forged and passed the check, is not well within the "shortly after" provision of the rule. Particularly is this so, in view of Detective Smith's testimony of the defendant's oral statements admitting his participation in the Topeka burglary and larceny and the cashing of one of the checks stolen therefrom in Junction City. Moreover, there was testimony by two eyewitnesses who identified the defendant as the person who forged and uttered the check in Junction City on May 12, 1965, it being one of the checks stolen during the course of the Topeka burglary. The fact of that burglary was clearly established by the testimony of the owner of the victimized business and officers of the Topeka police department, and the district court did not err in admitting evidence of the defendant's possession of one of the checks stolen during the burglary.

It is next contended the district court erred in giving instruction No. 17 over the defendant's objection. The instruction reads:

"If any one or more of the jurors, after carefully and candidly considering all the evidence in the case with his fellow jurors, entertains a reasonable doubt of the defendant's guilt then you cannot find him guilty, but if, after such consideration, any one or more of the jurors believe the defendant guilty beyond a reasonable doubt, then the defendant cannot be acquitted."

While the instruction is not a model in form, it is not legally insufficient, and when considered along with other instructions touching upon burden of proof, reasonable doubt, and presumption of innocence, it was not erroneous, and the district court did not err in giving it.

The defendant's argument that the district court had no basis in fact to sentence the defendant to imprisonment for 35 years confinement in the Kansas State Penitentiary under the Habitual Criminal Act, is so lacking in merit as to be frivolous. No claim is made the state did not give notice to the defendant and his counsel of its intent to invoke the Habitual Criminal Act, or that the county attorney acted in bad faith in introducing evidence establishing the defendant had five times previously been convicted of felonies. The point the state introduced evidence exceeding the limit of three prior convictions named in the statute and that it makes no provision for application of the Act in the event of more than three prior convictions, is without foundation in law.

Other points have been raised by the defendant which have been

discussed in the points covered, and it is unnecessary to lengthen this opinion by repealing what has been said and held concerning them.

We have carefully reviewed the record and are of the opinion the defendant had a full and fair trial in acordance with every right secured by the Constitution, and the verdict of the jury and the judgment of the district court were just and proper under the evidence.   The judgment is affirmed.